UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC MAYS, LIBERTY BELL,
JOHNNY BILLINGS, and LARRY TARLTON,

        Plaintiffs,                                Civil Action No. 20-CV-12504

vs.                                          HON. BERNARD A. FRIEDMAN

KATE FIELDS, MONICA GALLOWAY,
EVA WORTHING, JERI WINFREY-CARTER,
ALLAN GRIGGS, MAURICE DAVIS,
SANTINO GUERRA, HERBERT WINFREY,
ANGELA WHEELER, WILLIAM METCALF,
SHELDON NEELY, DUVARL MURDOCK, and
CITY OF FLINT,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AS TO PLAINTIFFS' FEDERAL CLAIMS AND DISMISSING PLAINTIFFS' STATE-LAW CLAIMS WITHOUT PREJUDICE

        This matter is presently before the Court on defendants' motion to dismiss [docket entry 12]. Plaintiffs have responded and defendants have replied. Pursuant to E.D. Mich. LR 71(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall grant the motion as to plaintiffs' federal claims and dismiss plaintiffs' state-law claims without prejudice.

        Plaintiff Eric Mays is a member of the city council in Flint, Michigan. Plaintiffs Liberty Bell, Johnny Billings, and Larry Tarlton, are three of Mays' constituents. Defendants Kate Fields, Monica Galloway, Eva Worthing, Jeri Windrey-Carter, Allan Griggs, Maurice Davis, Santino Guerra, and Herbert Winfrey are the other Flint city council members. Defendant Angela Wheeler is Flint's city attorney. Defendant William Metcalf is a Flint police officer. Defendant Sheldon

Neely is Flint's mayor.  And defendant Duvarl Murdock is a member of the mayor's staff.

Mays alleges that on January 23, 2019, the city council members, "at the direction of" defendants Fields and Wheeler, had defendant Metcalf arrest and remove him "solely and unjustifiably in response to MAYS' duly-exercised official act of calling a properly-scheduled, properly-noticed Finance Committee meeting to order."  Compl. ¶ 22.

Similarly, on February 5, 2020, city council again had plaintiff arrested and removed from a council session, this time "at [the] direction" of Fields, Wheeler, and Neely. *Id.* ¶ 26.  Shortly after this "second unlawful removal," plaintiff encountered defendant Murdock at a Flint bar where Murdock allegedly taunted plaintiff regarding his "serial exclusion from Council proceedings." *Id.* ¶ 28.  Murdock allegedly struck plaintiff and threw him to the floor. *Id.* ¶ 29.

On a third occasion, on March 4, 2020, the defendant council members, "again directed by" Field, Wheeler, and Neely, had plaintiff removed from the council session by defendant Metcalf, "this time on pretext of exceeding speaking time limits to a token extent." *Id.* ¶ 31. This "rogue removal . . . was also supplemented by rogue criminal charges of 'disorderly conduct,' none of which were ever leveled against any other speakers (let alone against any other City Council Members) who were ever identified as allegedly exceeding times for speaking before Council, or any speech-based pretexts." *Id.* ¶ 32.

Plaintiff alleges that his "differential treatment . . . vis a vis other Council persons and/or individuals speaking before City Council have been strictly in retaliation for the content of said Plaintiff's speech." *Id.* ¶ 35.

On a fourth occasion, on May 19, 2020, when city council met via Zoom, the defendant council members "again directed by" Fields, Wheeler, and Neely, "abuptly and suddenly,

unlawfully and wrongfully exclude[d] Plaintiff ERIC MAYS from the City Council proceedings then being remotely conducted by . . . 'muting' [plaintiff's] voice indiscriminately and for extended periods." *Id.* ¶ 37.

On each of the occasions when plaintiff was excluded from council sessions, he alleges that the responsible defendants violated a number of his constitutional rights and also "silenced [him] in his capacity as the representative voice of the First Ward . . . , thereby depriving said co-Plaintiffs of their . . . rights of representation." *Id.* ¶¶ 23, 27, 33, 38.

Plaintiffs claim that Mays' exclusion from city council sessions violated their substantive and procedural due process rights (Counts I and II), their First Amendment rights to freedom of speech and association (Count III), their equal protection rights "as guaranteed by US Const., Am I [sic], the Michigan Constitution of 1963, and the City of Flint's own Charter, Council Rules and other City documents securing rights" (Count IV), Mays' Fourth Amendment right against unreasonable seizure (Count V), and 42 U.S.C. § 1983, apparently for the previously asserted federal constitutional claims (Count VI).  They also assert claims for negligence (Count VII), false arrest/false imprisonment (Count VIII), and assault and/or battery (Count IX).  For relief, plaintiffs seek damages, costs, attorney fees, and unspecified "injunctive relief."

In their motion to dismiss, defendants argue that plaintiffs' claims, to the extent they are based on Mays' exclusion from city council sessions, are barred by the doctrine of legislative immunity.  The doctrine affords absolute immunity not only to member of Congress, but also to "state and regional legislators . . . for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998).  "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Id.* at 52.

3

Among other reasons for the doctrine, the Supreme Court has noted that

> the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. *See Tenney, supra*, at 377, 71 S.Ct., at 788-89 (citing "the cost and inconvenience and distractions of a trial"). And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability. *See Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982).
>
> Moreover, certain deterrents to legislative abuse may be greater at the local level than at other levels of government. Municipalities themselves can be held liable for constitutional violations, whereas States and the Federal Government are often protected by sovereign immunity. *Lake Country Estates, supra*, at 405, n. 29, 99 S.Ct., at 1179 (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). And, of course, the ultimate check on legislative abuse—the electoral process—applies with equal force at the local level, where legislators are often more closely responsible to the electorate. *Cf. Tenney, supra*, at 378, 71 S.Ct., at 789 (stating that "[s]elf-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses").

*Id.* at 52-53.

Legislative immunity "attaches to all actions taken in the sphere of legitimate legislative activity." *Id*. at 54 (internal quotation marks and citation omitted). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* Legislative acts include consideration of and voting on legislation, and signing and vetoing bills. *Id.* at 55. More broadly, legislative activity "includes actions that are an integral part of the deliberative and communicative processes by which lawmakers participate in matters within their jurisdiction." *Gamrat v. McBroom*, 822 F. App'x 331, 333 (6th Cir. 2020) (internal quotation marks and citation omitted). A legislative body's decision to expel one of its members is a legislative activity, and the expelled member "cannot sue the [body's members] for participating in that

process." *Id*. at 334 (citing *Whitener v. McWatters*, 112 F.3d 740 (4th Cir. 1997)).[1]  The Western

District of Michigan has likewise recognized that members of an elected body "must submit to [the

body's] power to discipline its own members for their 'legislative speech.'" *Shields v. Charter Twp.*

*of Comstock*, 617 F. Supp. 2d 606, 615 (W.D. Mich. 2009) (citing *Whitener*, 112 F.3d at 744).

Plaintiff Mays' claims against the city council members are plainly barred by

legislative immunity.  He was removed from council sessions and "muted" during the Zoom call as

a disciplinary measure.  A review of the transcripts of these four sessions, copies of which are

attached to defendants' motion as Exhibits E, F, G, and H, shows that on each occasion this action

was taken because plaintiff was being argumentative and disruptive.  *See, e.g.,* Ex. E at 11-20; Ex.

F at 153-60; Ex. G at 29-38; and Ex. H at 2-3.  Under the case authority cited above, plaintiff may

---

[1] In *Whitener*, plaintiff was a member of a county board of supervisors.  He sued other
board members for First Amendment and due process violations when they voted to censure him
and strip him of his committee assignments as punishment for abusive language and uncivil
behavior toward two of the board members.  *See* 112 F.3d at 741.  In affirming the district
court's dismissal of the complaint, the Fourth Circuit stated:

> Americans at the founding and after understood the power to punish
> members as a legislative power inherent even in "the humblest
> assembly of men." *Id*. This power, rather than the power to exclude
> those elected, is the primary power by which legislative bodies
> preserve their "institutional integrity" without compromising the
> principle that citizens may choose their representatives. *See Powell
> v. McCormack*, 395 U.S. 486, 548, 89 S.Ct. 1944, 1978, 23 L.Ed.2d
> 491 (1969) (holding Congress' power to judge qualifications of
> members-elect limited to enumerated qualifications); *see also* U.S.
> Const. art. I, § 5, cl. 2 (granting the power to expel only by two-thirds
> vote). Further, because citizens may not sue legislators for their
> legislative acts, legislative bodies are left to police their own
> members. Absent truly exceptional circumstances, it would be
> strange to hold that such self-policing is itself actionable in a court.

*Id.* at 744.

not sue his fellow council members (or those allegedly working in concert with them or at their direction, *see Gravel v. United States*, 408 U.S. 606, 618 (1972); *Gamrat*, 822 F. App'x at 333), for taking such disciplinary action against him. Plaintiffs' constituents' claims are barred for the same reason. The Court shall therefore dismiss plaintiffs' federal claims (Counts I-VI), all of which are based on this disciplinary action.

The remaining claims (Counts VII-IX) are brought under state law. This Court's subject matter jurisdiction is based entirely on the federal question presented by plaintiffs' federal constitutional claims. *See* Compl. ¶ 17. The Court has only supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367, as this is not a diversity case. When, as here, the Court disposes of the federal claims and it has only supplemental jurisdiction over the state-law claims, the Court should dismiss the state-law claims without prejudice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008). Accordingly,

IT IS ORDERED that defendants' motion to dismiss is granted as to Counts I-VI.

IT IS FURTHER ORDERED that plaintiffs' remaining claims (Counts VII-IX) are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated: March 5, 2021                     SENIOR UNITED STATES DISTRICT JUDGE
        Detroit, Michigan

6